IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Gary Steven Scott, | Civil Action No. 6:19-0384-RMG |
| Plaintiff, | |
| v. | **ORDER AND OPINION** |
| Warden Scott Lewis, Associate Warden Williams, Major Earley, Lieutenant Palmer, Lt. Scyphers, Lieutenant Lockhart, and Lieutenant Jones, | |
| Defendants. | |

Before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 72) recommending that the Court grant Defendants' motion for summary judgment (Dkt. No. 41). For the reasons set forth below, the Court adopts in part and declines to adopt in part the R & R as the Order of the Court. Defendants' motion for summary judgment is granted in part and denied in part.

**I.  Background**

Plaintiff Gary Scott is a post-conviction incarcerated person proceeding *pro se* to bring a claim, pursuant to 42 U.S.C. § 1983, for Defendants' violation of his Eighth Amendment rights for their alleged use of excessive force and deliberate indifference to his serious medical need. Plaintiff's claim arises from a May 11, 2017 incident, in which he was being transported to and from Perry Correctional Institution for a urologist appointment, having been diagnosed with an over-active bladder and benign prostatic hyperplasia. (Dkt. No. 1 at 6.) During the approximately four-hour transport, Plaintiff requested to use a nearby restroom when the bus was stopped, but was told "emphatically, 'No.'" Plaintiff's renewed request was again denied at the second transport stop to the destination. Plaintiff alleges that this aggravated his urological

condition, and that his resulting urine-stained clothing prevented him from offering his midday and evening prayers.

During transport back to Perry, Plaintiff's requests were again denied. Defendant Scyphers responded in one instance, "shut up, you little snitch," referencing Plaintiff previously telling other officers about his denied requests and asking his urologist to update his medical records to reflect that he be transported in a van, rather than the bus that required mechanical restraints prohibiting him from using a restroom. (*Id.* at 6-8, No. 48-1.) After being called a "snitch" in front of fellow inmates, Plaintiff "became instantly belligerent," leading to Defendant Scyphers on the bus to call ahead for Defendants Williams, Earley and Palmer to meet it upon arrival, at which point Plaintiff told them what had transpired. (*Id.* at 9-10.) Plaintiff discusses at length S.C.D.C. Policy Op. 22.01, regarding use of mechanical security restraints. He seeks "the liability cap of $350,000." (*Id.* at 12, 17.)[1]

The Court previously dismissed Officer Brown as a defendant pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (Dkt. No. 69.) Before the Court now is the remaining Defendants' motion for summary judgment (Dkt. No. 41), to which Plaintiff has responded in opposition (Dkt. No. 62) and Defendants replied (Dkt. No. 64). The Magistrate Judge recommends that the Court grant Defendants' motion for summary judgment. Plaintiff filed no objections.

---

[1] Regarding exhaustion of administrative remedies, on which Defendants do not move to dismiss, Plaintiff cites the Prison Litigation Reform Act and alleges that he attempted to informally resolve his grievance, specifically that his "grievance was impeded by agency staff when I logged a complaint with the Grievance Branch, Branch Chief, she erroneously declared me to be time barred;" and "I filed a informal resolution with Major Earley who was present when they intercepted the bus on the return trip, but the RTSM came up missing so I noticed the Grievance Branch, Branch Chief." (Dkt. No. 1 at 11, 18.)

## II. Legal Standard

### A. Review of R & R

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight and the responsibility to make a final determination remains with the Court. *See, e.g., Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where there are specific objections to the R & R, the Court "makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Where there are no objections to the R & R, the Court reviews the R & R to "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection . . . we do not believe that it requires any explanation.").

### B. Motion for Summary Judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact" and it is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment should therefore be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-movant must

demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. For this showing, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. <u>Discussion</u>

The crux of Plaintiff's claims is that, in light of his known urologic and prostate medical conditions, "[t]he repeated denial of the use of a privy while in mechanical restraints and no offer [of] a urine bottle constituted excessive force in violation of the 8th Amend. and S.C.D.C. Policy Op. 22.01," "deliberate indifference to a serious medical need," and "cruel and unusual punishment." (Dkt. No. 1 at 12, 13, 17.)

#### A. **Use of Excessive Force**

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious injury." *Hudson v. McMillan*, 503 U.S. 1, 4 (1992). When reviewing an allegation of excessive force, the district court must consider (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the threat to the staff and inmates as reasonably perceived by the prison officials on the basis of the facts known to them, (4) the efforts made to temper the severity of a forceful response, and (5) the extent of the injuries suffered by the prisoner. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The court should "decide excessive force claims based on the nature of the force, rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). "Even when a prisoner's conduct warrants some form of response, evolving norms of decency require prison officials to use techniques and procedures that are both humane and restrained." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). "[T]he core judicial inquiry is .

. . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 at 996.

Plaintiff alleges that he was kept in mechanical security restraints on the bus and not allowed out of them in order to use a bathroom, in contravention of S.C.D.C. Policy Op. 22.01—which provides, as he alleges, "mechanical security restraints will not prevent the use of restroom facilities or create a substantial risk of a serious medical problem"—constituting use of excessive force. (Dkt. No. 1 at 13-14.) Construing the facts alleged and their reasonable inferences in a light most favorable to Plaintiff, and considering the nature of the force alleged, the Court finds that the force does not rise to the level of that maliciously applied to cause Plaintiff's urologic and prostate conditions to become aggravated and painful. *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) ("Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment.") (citing *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994)). The Magistrate Judge's recommendation for this claim is adopted and Defendants' motion to dismiss it as to all Defendants is granted.

**B.    Deliberate Indifference to a Serious Medical Need**

The Magistrate Judge recommends that the Court dismiss this claim because Plaintiff failed to demonstrate he had a serious medical need and failed to allege involvement by every Defendant. The Court declines in part to adopt that recommendation.

The Eight Amendment prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition "forbids the unnecessary and wanton infliction of pain" by prison officials in inmates. *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and

that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017).

Regarding the first component, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Plaintiff alleges that he has been "diagnosed with over-active bladder and benign prostatic hyperplasia." (Dkt. No. 1 at 6.)[2] "Urinary incontinence may be an objectively serious medical need." *Neff v. Warden*, No. RDB-07-3103, 2008 WL 5460264, at *3 (D. Md. June 19, 2008) (granting defendant summary judgment because "no evidence that . . . prison staff have interfered with any treatment recommended" for urinary incontinence); *see also Chris Murray, #238-171, v. Dr. Mahoobeh Memarsadeghi and Wexford Health Sources, Inc.*, No. TDC-18-3728, 2019 WL 6528893, at *1, *4 (D. Md. Dec. 4, 2019) (holding that plaintiff—with a medical history including "benign prostatic hyperplasia [and] urinary tract obstruction" and alleging failure to diagnose and correct "the blocked urinary tract" constituted deliberate indifference— "suffered from an objectively serious medical condition that required surgery"); *Chance v. Spears*, No. 2:08-1156-DAF, 2009 WL 3768736, at *5 (S.D. Va. Nov. 10, 2009) ("As an initial matter, the court must conclude that the conditions at issue—manifested by an inability to urinate followed by loss of bladder control, chronic severe pains, shooting pains, and numbness—are objectively serious medical problems by Eighth Amendment standards."). Plaintiff's complaint

---

[2] The record includes an S.C.D.C. Health Services Medical Summary supplied by Plaintiff, which does not contain any information refuting his allegation that his hyperactive bladder or prostate enlargement had been diagnosed by a medical professional. Indeed, this evidence reflects that Plaintiff's concern—that "he has a need to be able to relieve himself and the four hour bus trip between PCI/KCI does not allow him the opportunity"—was "signed off" on by two medical professionals, a registered nurse and a nurse practitioner, who decided to "forward [the concern] to MD/FNP for transportation determination." (Dkt. No. 62-1 at 2.)

and the record support a plausible claim that his diagnosed over-active bladder and benign prostatic hyperplasia constitute a serious medical need.

Regarding the second component of the claim, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when the official subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837). This is a higher standard than negligence or recklessness because it is insufficient to allege merely that the official should have known of a risk. *Id.* Rather, "he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.*

On this record, it is reasonable to infer that Defendant Scyphers had knowledge of both. First, that he had knowledge of Plaintiff's urologic medical condition because he was transporting Plaintiff for purposes of a medical examination by "Dr. Lee (my urologist for over 15 years)." (Dkt. No. 1 at 7.) Second, that he had knowledge of an excessive risk to Plaintiff's health or safety if prohibited from urinating for approximately four hours at a time: Defendant Scyphers himself does not dispute that Plaintiff "requested to exit the bus at a stop at Tyger River Correctional Institution to use the restroom" (Dkt. No. 41-6 ¶ 9); and, as Plaintiff alleges, he "asked both bus drivers to use the privy because of the very condition (urinary in failure) I was being driven to see my urologist for [and therefore] it stood to reason that I'd have to use the privy along the way, which was almost four hours on way" (Dkt. No. 1 at 7). Summary judgment for a prison official defending a deliberate indifference claim relating to urinary incontinence may be appropriate when there is "no evidence" that he "interfered with any treatment recommended" for it. *Neff*, 2008 WL 5460264, at *3. Here, construing the record in a light most favorable to the non-movant and affording the *pro se* litigant's pleading an appropriately liberal construction, there is evidence that Defendant Scyphers interfered with

Plaintiff urinating in a bathroom, arguably a recommendation for an approximately fifty-year old man with diagnosed urologic conditions.[3]

Last, Defendants raise that "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution[.]" *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). (Dkt. No. 41-1 at 6.) As they recite, the "plaintiff must show that such policy or custom amounted to a 'deliberate indifference' to [his or her] constitutional right." *Washington v. Whitaker*, 451 S.E.2d 894, 898 (S.C. 1994). (Dkt. No. 41-1 at 6.) Here, Plaintiff alleges that when he requested to use the restroom, he "was told emphatically 'No' because Scott Lewis (the Warden at the time of this incident) ordered them not to let anyone off the bus under any circumstances." (Dkt. No. 1 at 6.)[4] A generalized directive to be applied in any circumstances, given by a Warden to his or her lieutenants, is arguably a "policy." The Court is cognizant of the value of prison officials mandating and complying with security protocols, but also that "the inmate's medical needs should take precedence when there is tension between those needs and a

---

[3] The Magistrate Judge concludes that Plaintiff did not demonstrate he had a serious medical need in part because Plaintiff alleges that he relieved himself in his clothes on the bus. (Dkt. No. 72 at 6.) But Defendant Scyphers himself disputes that this happened, instead affirming that he observed Plaintiff wearing dry clothes both times he exited the bus. (Dkt. No. 41-6 ¶¶ 7, 12.) Defendant Scyphers also disputes Plaintiff's allegation that he was not offered a urine bottle on the bus. (Dkt. No. 41-6 ¶ 11; No. 62 at 2.) Indeed, "Defendant Scyphers strongly disagrees with the Plaintiff's allegations" in full. (Dkt. No. 41-1 at 10.) There remain, therefore, genuine issues of material fact in dispute as to whether Plaintiff's serious medical need of urinary incontinence and enlarged prostate was alleviated or aggravated by Defendant Scyphers's conduct during transport.

[4] Defendant Scyphers attests, "I would not let the Plaintiff off the bus due to concerns that the Plaintiff could encounter a victim's witness or could encounter someone else with whom he had a conflict and had been intentionally separated from." (Dkt. No. 41-6 ¶ 10.) It is unclear if this is what Scyphers told Plaintiff in response to his request, what Scyphers contemplated internally, or what Scyphers was directed to do by a supervisor or policy.

prison's alleged need to adhere strictly to prison policy." *Hartsfield v. Colburn*, 491 F.3d 394, 401 (8th Cir. 2007).

At bottom, the Court finds that there remain genuine issues of material fact in dispute as to whether Defendant Scyphers was deliberately indifferent to Plaintiff's urologic and prostate medical needs. But the Court also finds that Plaintiff's claim for deliberate indifference should be dismissed as to Defendants Williams, Earley, Palmer, Lockhart and Jones for two reasons. First, Plaintiff alleges that only Defendant Scyphers was on the bus and denying him an opportunity to urinate in a restroom. Second, although supervisory officials may be held liable for constitutional injuries inflicted by their subordinates, the plaintiff "assumes a heavy burden of proof in supervisory liability cases" because he or she "must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source" and that "the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). There is insufficient record evidence to support that finding, here. The Court, therefore, adopts the Magistrate Judge's recommendation that the deliberate indifference claim be dismissed as to Defendants Williams, Earley, Palmer, Lockhart and Jones for failing to sufficiently allege their interference with treatment for a serious medical need.

C. **Sovereign Immunity Defense**

Defendants contend that they are entitled to sovereign immunity against claims for damages brought against them in their official capacities.[5] The Magistrate Judge does not address this argument and the Court considers it now only as to deliberate indifference by

---

[5] The Court reaches immunity defenses after reviewing the record on Defendants' Rule 56 motion because "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Defendant Scyphers. "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Under the Eleventh Amendment, . . . neither a State nor its officials in their official capacity may be sued for damages in federal court without their consent." *Gamache v. Cavanaugh*, 82 F.3d 410, at *1 (4th Cir. 1996) (unpublished table decision). Eleventh Amendment protection from suits for damages also applies to state employees acting in their official capacity, as "arms of the state." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.* 506 U.S. 139, 144 (1993) (Stevens, J., dissenting). The Eleventh Amendment, however, generally does not bar suits for damages against state officers sued in their individual capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "The course of proceedings" will typically indicate the nature of the liability sought to be imposed. *Id.* at 167 n.14.

In his form complaint, next to Defendant Scyphers's name, Plaintiff checked the boxes next to both "Official capacity" and "Individual capacity." (Dkt. No. 1 at 3.) Plaintiff then appended ten pages of written allegations. Official capacity suits are those that entertain the constitutionality of an entity's policy or custom. *Id.* at 166. The allegations as to Defendant Scyphers include issues concerning S.C.D.C.'s policies or customs relating to officials responding to inmates' medical-related requests during group transport, and Plaintiff points to S.C.D.C. Policy Op. 22.01 "as the basis for this action," although it primarily underpins the claim for use of excessive force. (Dkt. No. 1 at 11.) Allegations of deliberate indifference by Defendant Scyphers in his official capacity would be barred by his sovereign immunity to this claim for damages.

## D. Qualified Immunity Defense

Defendants also argue that they are entitled to qualified immunity against claims to the extent they are brought against them in their individual capacities. (Dkt. No. 41-1 at 18-19.) The Court considers this defense as to the claim for deliberate indifference by Defendant Scyphers. The doctrine of qualified immunity protects government officials from liability where the official's conduct does not violate a "clearly established" constitutional right. *Evans v. Chalmers,* 703 F.3d 636, 646 (4th Cir. 2012). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this right applies to the actions of the official must also be apparent." *Wiley v. Doory,* 14 F.3d 993, 995 (4th Cir. 1994).

If the district court first determines that no clearly established right has been violated, the qualified immunity inquiry ends "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998). Then, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right." *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir. 1992). For this, the district court must "delve deeper, into the more fact-specific question [of] whether a reasonable person in the position of these officials would have known, upon the information they possessed at the time, that" their specific conduct would constitute

deliberate indifference to a serious medical need. *Beeson v. Johnson*, 1990 WL 2330, at *3 (4th Cir. Jan. 2, 1990).

The Court has found that Plaintiff's diagnosed urologic and prostate conditions constitute a serious medical need, and that there remain genuine issues of fact in dispute as to whether Defendant Scyphers had subjective knowledge of Plaintiff's conditions and of the risk posed to Plaintiff by being unable to urinate in a bathroom for four hours at a time. Construed liberally and in a light favorable to Plaintiff, the pleading and record support finding that a "reasonable official would understand that what he is doing violates that right." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991). Namely, a reasonable official would understand that interfering with an inmate diagnosed with urologic and prostate conditions—indeed, being transported specifically to see a urologist for those conditions and asking to use the restroom in light of those conditions—from urinating in a bathroom for four hours at a time, violates the inmate's right to be free from interference with his serious medical need. Defendant Scyphers is not entitled to summary judgment on the qualified immunity defense for the claim brought against him in his individual capacity.

### IV. Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART and DECLINES TO ADOPT IN PART** the R & R as the Order of the Court. (Dkt. No. 72.) Defendants' motion for summary judgment (Dkt. No. 41) is **GRANTED IN PART and DENIED IN PART**. Plaintiff's claim for use of excessive force is dismissed as to all Defendants. His claim for deliberate indifference to a serious medical need is dismissed as to Defendants Lewis, Williams, Earley, Palmer, Lockhart and Jones; it is not dismissed as to Defendant Scyphers. This matter is referred back to the Magistrate Judge for further pre-trial proceedings on the claim for deliberate indifference to a serious medical need by Defendant Scyphers.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

December 18, 2019
Charleston, South Carolina